UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TABITHA NAHABEDIAN, as an
individual and AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF RICHARD F. NAHABEDIAN,

      Plaintiff,

vs.                                             Case No. 13-10122

ONEWEST BANK, FSB, a/k/a                  HON. AVERN COHN
INDYMAC MORTGAGE SERVICES, INC.,

      Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S**
**MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (Doc. 4)[1]**

### I.  INTRODUCTION

This is another one of many cases pending in this district involving a default on a mortgage and subsequent foreclosure proceedings.  As will be explained, Richard Nahabedian (Nahabedian) defaulted on a mortgage loan used to finance the purchase of residential property located at 29654 S. Meadowridge #17, Farmington Hills, Michigan (the property).  Foreclosure by advertisement proceedings have concluded and the redemption period has expired.  Nevertheless, plaintiff Tabitha Nahabedian (plaintiff), the personal representative of Nahabedian's estate,[2] and Nahabedian's widow, contends that

---

[1] Upon review of the papers, the Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] Plaintiff was appointed the Personal Representative of Nahabedian's estate on December 5, 2012.  Nahabedian passed away on October 12, 2012.

Nahabedian's estate has a right to the property.  Plaintiff also claims a right to the property individually.  Plaintiff is suing defendant OneWest Bank, FSB (OneWest), the mortgagee at the time of the foreclosure.

Plaintiff's complaint is in three counts, phrased as follows:

Count I:        Fraud and Misrepresentation;
Count II:       Violation of MCL 600.2305c; and
Count III:      Action to Quiet Title and Set Aside Sheriff Sale.

(Doc. 1-2 at 1-8).

Before the Court is defendant's motion to dismiss and/or for summary judgment. (Doc. 4).  For the reasons that follow, the motion is GRANTED.  This case is DISMISSED.

## II. BACKGROUND

On July 27, 2006, Nahabedian executed a mortgage on the property and a promissory note in the amount of $206,425.00.  (Doc. 4 at 25-39).  Nahabedian's mortgage on the property identifies Quicken Loans Inc. as lender, Nahabedian as borrower, and MERS as mortgagee and nominee for the lender.  (*Id.* at 25-26).  The mortgage was recorded on August 3, 2006, Liber 37932, Page 457, Oakland County Records.

On December 17, 2009, MERS, as nominee for Quicken Loans Inc. assigned the mortgage to OneWest.  (*Id.* at 41).  This assignment was recorded on January 13, 2012, Liber 41767, Page 205, Oakland County Records.

On July 12, 2009, Nahabedian conveyed the property as a married man to himself and his wife, the plaintiff, by quit claim deed.  (*Id.* at 43).  This conveyance was recorded on October 12, 2010, Liber 42453, Page 432, Oakland County Records.

Nahabedian defaulted on his mortgage loan, and attempted to work out a loan modification after his receipt of a notice letter from OneWest's counsel, Trott & Trott, P.C.

(Trott & Trott) and after notice was published informing him of the right to request a meeting with Trott & Trott as agent for the mortgage holder and/or servicer within thirty days.  (*Id.* at 45-46).  The letter is dated April 11, 2012.  As of April 11, the total amount due and owing under the mortgage loan was $252,913.07.  (*Id.* at 45).

Nahabedian contacted IndyMac Mortgage Services, Inc. (IndyMac)[3] and requested a loan modification.  (Doc. 5-2 at 5).  IndyMac confirmed receipt of Nahabedian's request for a loan modification and informed him that he would need to submit certain "missing" documents:

> **Borrower Response Package:** Your recent submission for a mortgage loan modification was missing your borrower response package.  Please submit your complete borrower response package to us as soon as possible, so we may continue to evaluate your documentation for a mortgage loan modification.

(*Id.* at 14).  Further, IndyMac informed Nahabedian that it was reviewing his application and financial situation for eligibility.  (*Id.* at 16).

On May 23, 2012, after Nahabedian failed to contact a housing counselor or Trott & Trott directly, OneWest commenced foreclosure by advertisement under Mich. Comp. Laws 600.3201, *et seq.*

On June 12, 2012, IndyMac informed Nahabedian that he was not eligible for modification due to the imminent foreclosure sale:

> While modification programs are designed to help borrowers who are experiencing financial hardship, not all borrowers will meet the eligibility requirements, and therefore, not all borrowers are eligible for a loan modification.

---

[3] IndyMac is a division of OneWest and serviced the loan.

> **In reviewing your loan for a possible modification, we have determined that we are not able to fulfill your request for a modification due to an imminent foreclosure sale of the subject property.**
>
> If your situation has changed since you applied for this modification you may reapply.  Please note, submitting a new application does not guarantee that we will review your loan for a modification.  Also, a new application does not guarantee that we will suspend foreclosure proceedings.

(Doc. 5-2 at 18) (emphasis in original).

OneWest published notice of a June 26, 2012 sheriff's sale in the Oakland County Legal News for four consecutive weeks prior to the sale, and a similar notice was posted on the property on May 26, 2012.

On June 26, 2012, a sheriff's sale was held, and OneWest was the purchaser of the property for $255,293.98.  The sheriff's deed was recorded on July 3, 2012, Liber 44380, Page 601, Oakland County Register of Deeds.  (Doc. 4 at 48).

On July 20, 2012, OneWest conveyed by quit claim deed its interest in the property to the Federal National Mortgage Corporation (Fannie Mae).  (*Id.* at 59).  This conveyance was recorded in August of 2012, Liber 44488, Page 725, Oakland County Records.  (*Id.*).

On October 21, 2012, Nahabedian passed away.  On December 5, 2012, plaintiff was appointed personal representative of Nahabedian's estate.  Two days later, on December 7, 2012, plaintiff filed a complaint in Oakland County Probate Court.  Plaintiff claimed that OneWest failed to provide a loan modification and violated Mich. Comp. Laws § 600.3205c.  Plaintiff asked for title to be quieted in favor of the estate or herself individually.  The case was removed to this Court on January 14, 2013.

Under Michigan law, Nahabedian and his estate had six months to redeem the

property.   *See* Mich. Comp. Laws § 600.3236.   The redemption period expired on December 26, 2012.   Neither Nahabedian or his estate redeemed the property within the six-month statutory redemption period, and title to the property vested in Fannie Mae on that date.   *See* Mich. Comp. Laws § 600.3236.

### III. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.   To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).   *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007).   The court is "not bound to accept as true a legal conclusion couched as a factual allegation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).   Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."   *Id.* at 679.   Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*   "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   *Id.*   In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."   *Id.* at 678 (internal quotation marks and citation omitted).

**B. Summary Judgment**

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial. *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**IV. ANALYSIS**

**A. Subject Matter Jurisdiction**

Although plaintiff did not file a motion to remand this case to state court, her response to OneWest's motion argues that this Court lacks subject matter jurisdiction to hear the case based on the "probate exception" to federal jurisdiction. Plaintiff is mistaken.

Objections to subject matter jurisdiction may be raised at any time. *Henderson v. Shinseki*, 131 S.Ct. 1197, 1202 (2011). "Indeed, a party may raise such an objection even if the party had previously acknowledged the trial court's jurisdiction." *Id.* (citation omitted).

**1. The "Probate Exception" To Subject Matter Jurisdiction**

Tracing its origin to the Judiciary Act of 1789, the Supreme Court has "recognized

a 'probate exception,' kin to the domestic relations exception, to otherwise proper federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 307 (2006) (citations omitted); *see also Markham v. Allen*, 326 U.S. 490, 494 (1946) ("[A] federal court has no jurisdiction to probate a will or administer an estate. . . ."). "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311-12. As the Sixth Circuit has explained, " '[t]he probate exception is a practical doctrine designed to promote legal certainty and judicial economy by providing a single forum of litigation, and to tap the expertise of probate judges by conferring exclusive jurisdiction on the probate court.' " *Lepard v. NBD Bank*, 384 F.3d 232, 237 (6th Cir. 2004) (citing *Cenker v. Cenker*, 660 F. Supp. 793, 795 (E.D.Mich. 1987)). Even when the requirements of diversity jurisdiction have been met, the probate exception strips the federal courts of jurisdiction over probate matters. *Id.* (citing *Storm v. Storm*, 328 F.3d 941, 943 (7th Cir. 2003); *Markham*, 326 U.S. at 494).

The test used to determine if federal court jurisdiction is appropriate is "whether under state law the dispute would be cognizable only by the probate court." *Id.* (citation omitted). In *Markham*, the Supreme Court explained that the probate exception is limited in scope:

> [W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

326 U.S. at 494 (internal citations omitted).  More recently, in *Marshall*, the Supreme Court observed that *Markham*'s "enigmatic words" proscribe " 'distrub[ing] or affect[ing] the possession of property in the custody of a state court.' " 547 U.S. at 311.  Specifically, the Supreme Court reasoned that *Markham* is "essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*."  *Id.* (citations omitted).  Federal courts, the Supreme Court explained in *Markham*, "have jurisdiction to entertain suits 'in favor of creditors, legatees and [heirs]' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court."  326 U.S. at 494; *see also* Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3610 (2012) ("[T]he probate exception to diversity of citizenship jurisdiction is narrow, preventing federal courts only from probating wills or administering estates, or taking any action that would interfere with property that is in the custody of a state court.").

### 2. The "Probate Exception" Does Not Apply

As another court has explained, "[d]etermining whether a case falls within the probate exception requires a two-part inquiry."  *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 252 (S.D. N.Y. 2006).  "First, the district court sitting in diversity must determine if it is 'being asked to directly probate a will or administrate an estate.'  If so, the action is outside of the court's jurisdiction, as such actions are 'purely probate' in nature."  *Id.* (citing *Markham*, 326 U.S. at 296; *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002)).  This is not the case here.  Plaintiff is not asking the Court to directly probate Nahabedian's will or to administer his estate.

"Second, if the first question is answered in the negative, the court must determine if the case at hand would require the district court to 'interfere with the probate proceedings, [ ] assume general jurisdiction of the probate[,] or control [ ] property in the custody of the state court.  In any of these situations, the district court must dismiss the case for lack of subject matter jurisdiction."  *Id.* (citing *Moser*, 294 F.3d at 340; *Markham*, 326 U.S. at 494) (alterations in original).  Plaintiff claims the latter, that the Court's adjudication of this case would exercise control over property that is controlled by the probate court.  Plaintiff misinterprets the case law.

Plaintiff's argument that this Court lacks subject matter jurisdiction under the probate exception is premised on her misconception that the property is "in the custody" of the probate court.  As will be explained, the estate does not have an interest in the property because the redemption period has expired and the property was not redeemed.  Plaintiff fails to make a showing of fraud or irregularity sufficient to unwind the foreclosure proceedings.  Thus, the probate court could not exercise *in rem* jurisdiction over the property.  The property is not an asset of the estate.

Other courts have declined to extend the probate exception in analogous situations.  In *Abercrombie v. Andrew College*, 438 F. Supp. at 254-55, the court reasoned that property that was transferred *inter vivos* by the decedent was not considered an asset of the estate.  The court reached this conclusion even though the decedent's estate was challenging the validity of the deed.  *Id.* at 255.  The court explained, "[U]nless and until some judicial authority accepts Abercrombie's objections to the validity of the Deed, which was recorded on March 11, 1992, the Property is not part of Ms. Murphy's estate, but in fact belongs to Andrew College.  *Id.* at 255 (citing *Mich. Tech. Fund v. Century Nat'l Bank*

9

*of Broward*, 680 F.2d 736, 740–41 (11th Cir. 1982); *Bugbee v. Donahue*, 483 F. Supp. 1328, 1331 (E.D. Wis. 1980)).

Like *Abercrombie*, in *Bugbee v. Donahue*, 483 F. Supp. at 1329, the estate of the decedent challenged the conveyance of certain property as fraudulently obtained.  The court explained why the real estate in question was not part of the estate, and, therefore, not "in the custody" of the state court:

> The real estate involved in this case, although listed as an asset in the decedent's estate, is in fact an asset only if the plaintiff is successful in his claim against the defendants. Thus, this Court in allowing the action to continue will not be assuming control of property in a state court's custody, nor will it be assuming general jurisdiction of the probate of the decedent's estate.

*Id.* at 1331.

This case is no different than *Abercrombie* and *Bugbee*.  The property is not an asset of the estate.  Rather, it is owned by Fannie Mae, as is evidenced by the record chain of title.  At best, when plaintiff initiated the probate action, the estate had a potential interest in the property if it was ultimately successful in this lawsuit.  This does not strip the Court of subject matter jurisdiction under the probate exception.  In any event, as explained in more detail below, the estate does not have a valid claim to the property.

### B. Substantive Claims

Having determined that subject matter jurisdiction is not absent, the Court turns to the substantive allegations in this case.

### 1. Fraud and Misrepresentation (Count I)

In count I, plaintiff claims that IndyMac sent Nahabedian a May 8, 2012 letter acknowledging Nahabedian's request for a loan modification.  In this letter, IndyMac

informed Nahabedian that "no action is needed from you [Nahabedian] at this time."

Plaintiff says that the representation that no further action was needed from Nahabedian

was false, and that Nahabedian lost the property by relying on that representation. Plaintiff

fails to make a showing of fraud and misrepresentation.

Under Michigan law, to prove a claim of fraudulent misrepresentation or common

law fraud, plaintiff must satisfy six elements:

> (1) the defendant made a material misrepresentation; (2) the
> representation was false; (3) when the representation was
> made, the defendant knew that it was false, or made it
> recklessly, without knowledge of its truth, and as a positive
> assertion; (4) the defendant made it with the intention that the
> plaintiff should act upon it; (5) the plaintiff acted in reliance
> upon the representation; and (6) the plaintiff thereby suffered
> injury.

*Roberts v. Saffell*, 280 Mich. App. 297, 403 (2008) (citations omitted).

Plaintiff fails to show how IndyMac's assertion, in response to Nahabedian's request

for a loan modification, that "no action is needed from [Nahabedian] at this time" is a

fraudulent misrepresentation. Rather, this statement merely acknowledges that IndyMac

received Nahabedian's request, and that it was being processed. This is evidenced by

reading the entire communication in context. The letter was sent to Nahabedian from Maria

Rangel, IndyMac's customer contact manager. (Doc. 5-2 at 15). She informed

Nahabedian that she was the new customer contact manager assigned to his case, and

that she would be replacing the previous contact manager. (*Id.*). Rangel further stated:

> No action is needed from you at this time. My team is
> reviewing your current situation and evaluating possible
> workout options to help you avoid foreclosure.

(*Id.*). On the same day, IndyMac sent Nahabedian another letter informing him that his

application for a loan modification was received, and that it was in the process of being reviewed. (*Id.* at 16). The letter conveyed to Nahabedian that IndyMac was reviewing his application. The statements made in the letter are not material misrepresentations; they are an acknowledgment that Nahabedian's application was recieved.

Plaintiff argues that she should be permitted to amend the complaint to state fraud with particularity. Stating fraud with particularity, however, is not plaintiff's problem. Rather, plaintiff erroneously relies on communications that were sent to Nahabedian that were meant to inform him that his application for a loan modification was received. Plaintiff fails to establish the falsity in these communications. Accordingly, allowing plaintiff the opportunity to amend the complaint would be futile.

### 2. Violation of MCL 600.3205c (Count II)

Count II of plaintiff's complaint claims that IndyMac violated Michigan's foreclosure by advertisement statute, specifically, Mich. Comp. Laws § 600.3205c. Section 600.3205c states, in pertinent part:

> (1) If a borrower has, either directly or through a housing counselor, contacted a person designated under section 3205a(1)(c) under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification.

The statute provides that the foreclosing party shall serve a written notice on the borrower containing, among other things, "[t]he names, addresses, and telephone numbers of the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer." Mich. Comp. Laws § 600.3205a(1)(c). Under section 3205a(1)(c), the foreclosing party must designate "1 of the persons named in subdivision

12

(b) as the person to contact and that has the authority to make agreements under sections 3205b and 3205c." If the borrower requests a meeting with the person designated under subdivision (c), "foreclosure proceedings will not be commenced until 90 days after the date the notice is mailed to the borrower." Mich. Comp. Laws § 600.3205a(1)(e).

Here, OneWest complied with the Michigan statute and designated Trott & Trott as its contact in a letter to Nahabedian dated April 11, 2012. (Doc. 4 at 45). Nahabedian did not contact Trott & Trott to request a statutory loan modification. Nor did Nahabedian contact a housing counselor. Instead, sometime before the property was foreclosed, Nahabedian contacted the mortgage servicer, IndyMac, directly.[4] (Doc. 5-2 at 2).

Plaintiff says that, when Nahabedian contacted IndyMac and requested a loan modification, it required foreclosure proceedings to be held off until July 11, 2012, which is ninety days after Trott & Trott's 3205a notice was sent. Thus, plaintiff says that the sheriff's sale on June 26, 2012 violated the statute. As such, plaintiff says the Court must unwind the foreclosure proceedings. Plaintiff is mistaken.

Nahabedian's actions in contacting IndyMac directly did not trigger the ninety-day extension contained in the statute. In order to trigger the ninety-day extension, Nahabedian was required to contact OneWest's designate, Trott & Trott, or a housing counselor directly. *See, e.g.*, *Smith v. Litton Loan Servicing, LP*, No. 12-1684, 2013 WL 888452, at *2 (March 12, 2013). Nahabedian did neither. He tried to obtain a loan modification directly from IndyMac. Thus, he did not trigger the ninety-day extension contained in the statute, but instead attempted to work out a loan modification with the mortgage servicer on his own.

---

[4] Nahabedian's letter to IndyMac requesting a loan modification is not dated.

In any event, even if contacting IndyMac triggered the ninety-day extension, Nahabedian's application for a loan modification was never approved.  Plaintiff's allegation that Nahabedian was "discussing" a modification of the loan with IndyMac when OneWest prematurely foreclosed on the property does not render the foreclosure that has now occurred void *ab initio*.  *Goryoka v. Quicken Loan, Inc.*, No. 11-2178, 2013 WL 1104991, at *2 (6th Cir. March 18, 2013).   Rather, the foreclosure is voidable on a showing of prejudice relating to the foreclosure process itself.  *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115 (2012).  "To demonstrate such prejudice, [plaintiff] must show that [Nahabedian or the estate] would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute."   *Id.* at 115-116. Indeed, "Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.' " *Conlin v. Mortgage Elec. Registration Sys., Inc.*, ___ F.3d ___, 2013 WL 1442263, at *3 (6th Cir. 2013).

Here, the six-month statutory redemption period has lapsed and Nahabedian and the estate did not redeem the property.  The filing of this lawsuit did not toll the redemption period.   *Id.* (citing *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009)).  Thus, plaintiff must show that Nahabedian and the estate would have been in a better position to preserve their interest in the property had the foreclosure sale occurred on July 11, 2012, as opposed to June 26, 2012.  Plaintiff fails to make such a showing.  Indeed, Nahabedian and the estate had until December 26, 2012 to redeem the property but did not make any attempt to do so.  Nor has plaintiff proffered any evidence showing that Nahabedian and the estate would have been in a

14

better position– *i.e.* that they would have been able to pay for the property– if the foreclosure was delayed sixteen days.

Further, a violation of the loan modification statute gives the plaintiff an option to convert a foreclosure by advertisement proceeding to a judicial foreclosure.  Mich. Comp. Laws § 600.3205c(6).  It does not, standing alone, amount to fraud or irregularity sufficient to unwind a completed foreclosure sale.  Thus, plaintiff's claim does not have any merit.

### 3. Quiet Title (Count III)

In count III, plaintiff claims a legal right to the property herself, as Nahabedian's wife, under the July 17, 2009 quit claim deed in which Nahabedian conveyed the property from himself to both himself and plaintiff.  The Sixth Circuit has recently explained that quiet title is a remedy and not a separate cause of action.  *Goryoka v. Quicken Loan, Inc.*, No. 11-2178, 2013 WL 1104991, at *3 (6th Cir. March 18, 2013).  Plaintiff's basis for the quiet title claim is the alleged Mich Comp Laws § 600.3205c violation explained above.  As discussed above, plaintiff's claim  is defective.  Plaintiff has not made a showing that either Nahabedian, the estate, or herself would have been in a better position to pay for the property if the foreclosure was delayed until July 11, 2012.  Therefore, there is no basis to quiet title in her name.

### V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss and/or for summary judgment has been granted.

SO ORDERED.

S/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated:  April 12, 2013

15

13-10122 Tabitha Nahabedian v. Onewest Bank, FSB


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 12, 2013, by electronic and/or ordinary mail.


S/Sakne Chami
Case Manager, (313) 234-5160